ERNEST KLEIN, Appellant, *v.* ALKOW & CO., INC., Respondent.

First Department, April 18, 1961.

*Benjamin Isaacs* for appellant.

*Irving Fox* for respondent.

*Per Curiam.* On April 28, 1959, the plaintiff, a customer of the defendant, a member of the New York Stock Exchange, requested the defendant to purchase 100 convertible bonds of Radio Corporation of America, of $1,000 denominations. The total cost was somewhat in excess of $127,000. This order was accepted by the defendant through its customer's man, one Julius Schreiber, and was executed. Schreiber was the representative of the defendant who had been handling the account of the plaintiff from its inception, i.e., from about the month of December, 1958.

The question at issue is whether payment for the bonds was to be made within seven business days, as the plaintiff contends, or only four business days, as is maintained by the defendant. If the latter, payment should have been made on May the fourth. No payment having been made by 2:20 P.M. of that day, the defendant sold the bonds in the open market. It is this sale, claimed by plaintiff to have been made in breach of the contract between the parties, which gives rise to this controversy. The trial court decided the factual question in favor of the defendant and dismissed the complaint. The plaintiff appeals.

The issue being one of fact, we ordinarily would be reluctant to substitute our findings in place of those of the trial court. However, we have reached the conclusion that the evidence preponderates so strongly in favor of the plaintiff as to make it necessary to follow this course.

Controlling, of course, is the agreement between the parties made at the time of the placement and acceptance of the order. Let us examine the testimony of the participants. The plaintiff

testified directly and firmly that at the time of the placing of this order, Schreiber told him that he would have seven days in which to make payment. There was no flat unequivocal denial by Schreiber that he had made such statement to the plaintiff. The strongest statement he made in this connection was his response to a question as to whether he did tell the plaintiff he would have seven days in which to make payment, which response is as follows: "The Witness: I tell to all my customers the fourth day is to be payment made, but the maximum settlement, the maximum time we can get is seven days and no extensions, no exceptions. I probably told him, too." Not only was that testimony equivocal but it was further weakened by being in direct variance with the testimony given by him in his examination before trial. There, without equivocation, he testified as follows:

"Q. In the usual course of business, how many days did he have to make payment on this cash account? A. Seven days.

"Q. How many days did he have to make payment on this account? A. Also seven days."

Moreover, at the trial, Schreiber did not deny plaintiff's statement that in their first transaction, as well as in the subsequent ones preceding the one at issue, he likewise told the plaintiff he would have seven days in which to make payment. His testimony was that he could not remember these conversations. In sum, as against the direct unequivocal testimony of the plaintiff as to what transpired when the order was placed, we have the equivocal, evasive and, to say the least, unimpressive testimony of Schreiber. Even if credited, such testimony does not amount to a denial of the plaintiff's version. We likewise have the testimony of Schreiber, given in his examination before trial, flatly supporting the plaintiff's version. There were no other participants in the making of the contract.

Let us examine the balance of the evidence to see in what direction it leads us.

There was received in evidence a transcript of the plaintiff's account with the defendant as prepared by the defendant. It likewise supports the plaintiff's position. It indicates that in prior transactions payments were made up to and even beyond the seven-day period. It shows that settlement in the very first transaction between the parties was not made until the seventh business day, thus buttressing the testimony of the plaintiff with respect to the arrangement made with the defendant at the time of the opening of his account.

The defendant, however, points to the confirmation slips delivered to the plaintiff in this transaction showing May fourth

as the payment date. They are of little help to the defendant because a four-day confirmation slip was likewise sent in connection with the first transaction where payment was made in seven days and similar slips were also sent in connection with subsequent transactions where payment was made beyond the four-day period.

Defendant placed in evidence Educational Circular No. 124 of the New York Stock Exchange to prove that a four-day settlement date was in accordance with the usual practice and custom of Wall Street. Nevertheless the defendant conceded that, with the consent of the broker, that practice could be varied and that a maximum of seven days could be allowed. Indeed, the same circular informs us that " the broker must take liquidating action if payment has not been received on the fourth business day after the trades in the case of margin accounts or within seven business days in a cash account." This account was a cash account and not one on margin. Again, we have support for the plaintiff's position.

We now turn to the telegram sent by the defendant to the plaintiff on the morning of April 30 — just two days after the acceptance of the purchase order. It demands a $20,000 deposit or confirmed instructions from a bank that it will accept delivery of the bonds against full payment. Unless such demand was complied with by 2:00 P.M. on May 1 the defendant advised that it would sell the bonds at market. What impelled the defendant to send that telegram the record does not show. But here we have a threat by the defendant to breach the contract — whether we accept the plaintiff's or defendant's version. Apart from the fact that it was improper, it clearly indicates that the defendant was unhappy about the payment arrangement made with the defendant — whether it be four or seven days — and it improperly sought to change it.

Indeed, the bonds were sold at about 20 minutes after 2:00 P.M. on May the fourth. The defendant's manager testified that regardless of the closing time of the market the plaintiff had " the entire business day of May 4th to make payment " or, as he put it, " [u]ntil about 3:30." In stock exchange transactions time is of the essence and that rule should apply to early selling as well as late payment. Thus, even accepting the defendant's version of the agreement, it is apparent that the sale in advance of 3:30 P.M. constituted a breach thereof.

But we cannot accept the defendant's version that May fourth was the settlement date. We are of the opinion that the great weight of the evidence points to a seven-day settlement period.

Accordingly, we conclude that the trial court's finding as to the time within which the plaintiff was to pay is contrary to the weight of the evidence and we therefore reverse such finding. We find the agreement provided for a seven-day settlement. We further find that the sale of the bonds at the time they were sold was unauthorized and such sale constituted a breach of the agreement entitling the plaintiff to damages. However, inasmuch as the proof of damages was inadequate, in the interest of justice, the plaintiff should be given an opportunity to present proof with respect thereto, and it is for that reason we order a new trial restricting it to the issue of damages.

Accordingly, the judgment should be reversed, on the law and the facts, with costs, judgment directed in favor of the plaintiff and a new trial ordered, limited solely, however, to the question of damages.

RABIN, J. P., VALENTE, McNALLY, STEVENS and BERGAN, JJ., concur.

Judgment unanimously reversed, on the law and on the facts, with costs to the appellant, judgment directed in favor of the plaintiff and a new trial ordered, limited solely, however, to the question of damages. Settle order on notice.